No. **22-1002**

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

In re: National Nurses United,
      New York State Nurses Association,
      Pennsylvania Association of Staff Nurses and Allied Professionals,
      American Federation of Teachers,
      American Federation of State, County and Municipal Employees, and
      American Federation of Labor and Congress of Industrial Organizations

Petitioners.

Martin J. Walsh, in his official capacity as Secretary of Labor, and Douglas L. Parker, in his official capacity as Assistant Secretary of Labor for Occupational Safety and Health, United States Department of Labor

Respondents.

_____

## EMERGENCY PETITION FOR A WRIT OF MANDAMUS, AND
## REQUEST FOR EXPEDITED BRIEFING AND DISPOSITION

_____

Pursuant to Federal Rule of Appellate Procedure and Circuit Rule 21, and in accordance with _Telecomm. Research & Action Ctr. v. FCC_ ("TRAC"), 750 F.2d 70 (D.C. Cir. 1984), and its progeny, the Unions[1] petition this Court to issue a writ

_____

[1] National Nurses United, with more than 175,000 members nationwide, is the largest union and professional association of registered nurses in the United States. New York State Nurses Association ("NYSNA") is New York's largest union and professional association for registered nurses, representing 42,000 nurses at

of mandamus under the All Writs Act, 28 U.S.C. § 1651(a), to compel the

Occupational Safety and Health Administration ("OSHA") to:

(1)    Issue — within thirty (30) days of this Court's grant of the writ — a

Permanent Standard for Healthcare Occupational Exposure to

COVID-19 ("Permanent Healthcare Standard") aimed at protecting

the life and health of millions of nurses and other frontline healthcare

workers throughout the United States in grave danger from the deadly

COVID-19 pandemic; and

(2)    Retain and enforce the Healthcare Emergency Temporary Standard on

Occupational Exposure to COVID-19 ("Healthcare ETS") issued by

---

hospitals and other healthcare facilities throughout New York State. Pennsylvania Association of Staff Nurses and Allied Professionals ("PASNAP") is a union that represents over 9,000 registered nurses and other professional employees employed by healthcare facilities in the Commonwealth of Pennsylvania. The American Federation of Teachers ("AFT") represents 200,000 nurses and healthcare workers throughout the United States, as well as other essential frontline workers in public services, K-12 education and higher education, totaling 1.7 million members who have worked tirelessly during the COVID-19 pandemic. The American Federation of State, County, and Municipal Employees ("AFSCME") and its local affiliates represent a broad spectrum of members who work in healthcare and healthcare-related settings in both the public and private sectors, including approximately 350,000 members nationwide who work in hospitals, clinics, home care, and long-term care, and 30,000 emergency medical technicians and paramedics. The American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") is a federation of 55 national and international labor organizations with a total membership of over 12 million working men and women, including many thousands of members across numerous affiliated unions who work in healthcare settings.

the Secretary of Labor on June 21, 2021, until the Healthcare ETS is properly superseded by a Permanent Healthcare Standard.

The Unions further request expedited briefing, with ten days for the response and five days for the reply.

## I.      INTRODUCTION

Nurses and other healthcare workers are the heroes of this pandemic. They have exhibited unimaginable levels of endurance and compassion, but they have also faced the greatest risk of contracting COVID-19 and dying from the disease or suffering debilitating illness and long-term adverse health effects. The Unions file this Petition because the agency tasked with shielding nurses and other healthcare workers from unsafe work conditions, the Occupational Safety and Health Administration (OSHA) has failed to protect them as expressly required by law. Despite the grave danger healthcare workers continue to face, OSHA has announced its intent to withdraw the Healthcare ETS, issued under section 6(c) of the Occupational Safety & Health Act of 1970 (OSH Act), 29 U.S.C. § 651 *et seq.*, without having replaced it with a permanent standard.

The failure to both retain the existing ETS and to adopt a permanent rule protecting healthcare workers violates the unambiguous command of the OSH Act. When OSHA determines an emergency situation exists (as it did here) and issues an emergency standard, that emergency standard must stay in effect until a final

rule is issued, which must be done within six months of publication of the

emergency standard. 29 U.S.C. § 655(c). OSHA does not have discretion to create

a temporal hole with indefinite duration in the regulatory framework of healthcare

worker protections while a pandemic rages. Since OSHA has announced that it will

not comply with the commands of the OSH Act, this Court must require that it do

so.

## II. STATEMENT OF FACTS AND REGULATORY HISTORY

### A. Pertinent Legal and Regulatory Background

Congress passed the Occupational Safety & Health Act of 1970 (OSH Act)

to "assure so far as possible every working man and woman in the Nation safe and

healthful working conditions." 29 U.S.C. § 651(b). Toward this goal, OSHA is

directed to place preeminent value on protecting worker safety. *Am. Textile Mfrs.*

*Inst. v. Donovan*, 452 U.S. 490, 540 (1981). Section 6(c) of the OSH Act provides

that OSHA "shall" issue an emergency temporary standard (ETS) "to take

immediate effect upon publication in the Federal Register if [it] determines (A)

that employees are exposed to grave danger from exposure to substances or agents

determined to be toxic of physically harmful or from new hazards, and (B) that

such emergency standard is necessary to protect employees from such danger." 29

U.S.C. § 655(c)(1). An ETS "shall be effective until superseded by a standard

promulgated in accordance with the procedures" for issuing a permanent standard.

29 U.S.C. § 655(c)(2). The publication of an emergency temporary standard serves as a proposed rule, initiating the procedure for promulgating a permanent standard under section 6(b)(5) of the Act. OSHA "shall promulgate" a permanent standard "no later than six months after publication of the emergency standard." 29 U.S.C. § 655(c)(3). *See also Fla. Peach Growers Ass'n, Inc. v. U.S. Dep't of Labor*, 489 F.2d 120, 124 (5th Cir. 1974) ("After issuing an emergency temporary standard, the Secretary must set in motion the procedures for promulgation of a permanent standard, which must issue within six months of the emergency standard's publication.") OSHA interprets this language to mean it "must" issue an ETS when it makes a finding that a "grave danger" exists and an ETS is "necessary" to protect against that danger. 86 Fed. Reg. 32380.

A danger is grave if it causes health effects that are "incurable, permanent, or fatal…as opposed to easily curable and fleeting effects." 86 Fed. Reg. at 32381 (quoting *Fla. Peach Growers*, 489 F.2d at 132)). To issue a permanent standard, OSHA must demonstrate that it will address a significant risk of material impairment of workers' health. *See Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 614-15 (1980). OSHA must issue an ETS when it determines workers face a "grave danger" from occupational exposure to harmful physical agents or "new hazards," 29 U.S.C. § 655(c)(1), a level of risk that is greater than the "significant risk" OSHA must find before adopting a standard

under Section 6(b), *Int'l Union, UAW v. Donovan*, 756 F.2d 162 (D.C. Cir. 1985) , *aff'g* 590 F. Supp. 747, 755-56 (D.D.C. 1984). Therefore, a hazard that poses a grave danger also poses a significant risk.

When an ETS is issued, it serves as a proposed permanent rule under section 6(b)(5) of the Act. Upon publication of an ETS, interested parties are afforded "a period of thirty days after publication to submit written data or comments." 29 U.S.C. § 655(b)(2). If requested, OSHA must hold a rulemaking hearing. Within 60 days of the expiration of the comment period—or, if a hearing is requested, at the completion of a hearing, OSHA "shall issue a rule promulgating, modifying, or revoking an occupational safety or health standard or make a determination that a rule should not be issued." 29 U.S.C. § 655(b)(4). The promulgation of any standard, including an emergency temporary standard, or any rule, order, or decision relating to a standard, must be accompanied by a statement of reasons for the action, to be published in the Federal Register. 29 U.S.C. § 655(e); *Dry Colors Mfr. Ass'n. v. U.S. Dep't of Labor*, 486 F.2d 98 (3d Cir. 1973) (holding that this requirement applies to emergency temporary standards).

## B.    Regulatory History

On March 4, 2020, National Nurses United filed a petition with the Secretary of Labor seeking an ETS to protect nurses from occupational exposure to COVID-19. (Available at

https://www.nationalnursesunited.org/sites/default/files/nnu/graphics/documents/NNUPetitionOSHA03042020.pdf.) At that time, there were 60 confirmed cases in the United States, and the Union recognized that nurses and other frontline healthcare workers would be especially vulnerable to COVID-19 because they would be in close contact with symptomatic COVID-19 patients while providing those patients with lifesaving care. The American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") and 22 national labor unions also petitioned OSHA to issue an ETS protecting all workers from COVID-19. When OSHA failed to respond to either petition, the AFL-CIO filed a mandamus action in the D.C. Circuit to compel the agency to act. *In re: AFL-CIO*, Case No. 20-1158 (D.C. Cir. May 18, 2020). While implicitly recognizing the grave danger facing employees in its filings with the court, OSHA argued that an ETS was unnecessary at that time because it believed existing OSHA standards, voluntary guidance, and enforcement under the OSH Act's general duty clause[2] would adequately protect workers. The D.C. Circuit refused to order OSHA to issue an ETS, finding "OSHA reasonably determined that an ETS is not necessary *at this*

---

[2] The "general duty clause," 29 U.S.C. § 654(a)(1), requires employers, in the absence of a standard, to provide employees "employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm."

*time*." *In re: AFL-CIO*, No. 20-1158, 2020 WL 3125324, at *1 (D.C. Cir. June 11, 2020) (emphasis added) (Order denying Petition).

President Biden issued an Executive Order on January 21, 2021, directing OSHA to "consider whether any emergency temporary standards on COVID-19 . . . are necessary." Exec. Order No. 13,999, Protecting Worker Health and Safety, § 2(a), 86 Fed. Reg. 7211 (Jan. 21, 2021). In response, in June 2021, OSHA issued an ETS regulating exposure to COVID-19 among healthcare workers, who OSHA believed faced the greatest risk. Occupational Exposure to Covid-19: Emergency Temporary Standard, 86 Fed. Reg. 32376 (June 21, 2021) ("Healthcare ETS"). The AFL-CIO and the United Food & Commercial Workers filed a petition for review challenging OSHA's failure to extend the ETS to all workers facing grave danger. *United Food & Commercial Workers v. U.S. Dep't of Labor, OSHA*, Case No. 21-1143 (D.C. Cir. June 24, 2021). That challenge to the Healthcare ETS is still pending, but briefing has been held in abeyance.

The Healthcare ETS comprises 252 pages in the Federal Register describing the scientific evidence of the grave danger posed by COVID-19, the need for the ETS, a detailed economic and technological feasibility analysis of the ability of healthcare employers to comply with the ETS, and a summary of the multi-pronged approach to protecting healthcare workers, taking into account the

protections offered by COVID-19 vaccinations. 86 Fed. Reg. 32426.[3] The ETS specifically stated that existing standard and the general duty clause were insufficient to protect healthcare workers from the grave danger posed by COVID-19. In response to the publication of the ETS in the Federal Register, 120 stakeholders submitted comments to OSHA, including many union parties, which urged OSHA, *inter alia*, to issue a permanent COVID-19 standard.[4] No party

---

[3] The multi-pronged approach to infection control OSHA found was necessary to protect healthcare workers includes the following requirements for covered employers: development and implementation of a COVID-19 plan (86 Fed. Reg. 32428); Patient screening and management (86 Fed. Reg. 32430); Standard and Transmission-Based Precautions - Isolation requirements (86 Fed. Reg. 32430); Personal Protective Equipment, including facemasks and respirators (86 Fed. Reg. 32431); Precautions during aerosol-generating procedures (86 Fed. Reg. 32442); Physical distancing between employees and other persons (86 Fed. Reg. 32443); Physical barriers (86 Fed. Reg. 32446);Cleaning and disinfection (86 Fed. Reg. 32448); Building ventilation (86 Fed. Reg. 32450);Screening of all employees for COVID-19, including testing at no cost to the employee when testing is required (86 Fed. Reg. 32452); Employee notification of COVID-19 symptoms (86 Fed. Reg. 32453); Employer notification of COVID-19 in the workplace (86 Fed. Reg. 32453); Removal of employees who test positive or is diagnosed with COVID-19, or who is told by a healthcare provider that he or she is suspected of having COVID-19, is experiencing an unexplained loss of taste and/or smell, or is experiencing a fever with a new unexplained cough and shortness of breath (86 Fed. Reg. 32453); Removal of employees who have been in close contact with a COVID-19 patient without appropriate PPE (86 Fed. Reg. 32453); Pay for employees who are removed under the conditions listed above (86 Fed. Reg. 32454); Paid leave for obtaining a COVID-19 vaccine (86 Fed. Reg. 32459); Training (86 Fed. Reg. 32460);Whistleblower protections (86 Fed. Reg. 32603); Recordkeeping and reporting (86 Fed. Reg. 32606).

[4] *See, e.g.,* Comments from Deborah Burger, RN, President of National Nurses United, available at https://www.regulations.gov/comment/OSHA-2020-0004-1444.

requested a public hearing and no hearing was scheduled. The comment period closed on August 20, 2021.[5]

On November 5, OSHA issued a second ETS, this time covering all employers with 100 or more employees except healthcare employers covered under the Healthcare ETS, mandating that each covered employer adopt a policy that either requires employees to be vaccinated or to be tested weekly and wear a mask while at work. The vaccine or testing ETS was challenged in multiple circuits and is currently before the Supreme Court on emergency petitions for a stay. Order in Pending Cases, *In re: Nat'l Fed'n of Indep. Bus. v. U.S. Dep't of Labor, OSHA*, No. 21A244, 595 U.S. __, 2021 WL 6061696 (Dec. 22, 2021); *Ohio v. U.S. Dep't of Labor, OSHA*, No. 21A247, 595 U.S.__, 2021 WL 6061694 (Dec. 22, 2021).

Despite the ongoing surge of COVID-19 cases from the omicron variant now sweeping the country and rising numbers of infections, hospitalizations and deaths, on December 27, 2021, OSHA announced that it was withdrawing the Healthcare ETS because "a final rule cannot be completed in a timeframe approaching the one contemplated by the OSH Act." (Exh. 1 attached hereto; also available at https://www.osha.gov/coronavirus/ets (last visited Jan. 4, 2022).) The

---

[5] *See,* https://www.federalregister.gov/documents/2021/07/20/2021-15326/occupational-exposure-to-covid-19-emergency-temporary-standard (last visited Jan. 2, 2022)

announcement acknowledged that COVID-19 continues to pose a grave danger to healthcare workers. Despite its earlier formal determinations that existing standards and the general duty clause were insufficient to protect healthcare workers from COVID-19, OSHA's announcement stated that it will now rely solely on those tools to protect healthcare workers from COVID-19. *Id.* No notice withdrawing the Healthcare ETS has been published in the Federal Register.

In its December 27 announcement, OSHA stated that it intends to work expeditiously toward a permanent standard, "and will do so as it also considers its broader infectious disease rulemaking." OSHA has been considering an infectious disease standard for more than a decade; its most recent regulatory agenda projects a *proposed* infectious disease standard in April 2022.[6]

## C.     OSHA Has Found that COVID-19 Poses a Grave Danger to Healthcare Workers

OSHA has determined that healthcare workers face a grave danger from workplace exposure to the novel coronavirus. 86 Fed. Reg. 32559. Healthcare workers "face a particularly elevated risk of exposure to SARS-CoV-2 in settings where patients with suspected or confirmed COVID-19 receive treatment or where patients with undiagnosed illnesses come for treatment." 86 Fed. Reg. 32412.

---

[6] https://www.reginfo.gov/public/do/eAgendaViewRule?pubId=202110&RIN=1218-AC46

Healthcare workers—including nurses—disproportionately bear the brunt of "caring for those infected by this disease." 86 Fed. Reg. 32377.

OSHA based its grave danger determination on several factors. OSHA pointed to the deadly consequences of COVID-19 infection; the "long-lasting and potentially permanent health effects" of COVID infection; and the serious health effects of even moderate or mild infection, including psychological illnesses and long COVID. 86 Fed. Reg. 32381. OSHA found that "each of these categories of health consequences independently poses a grave danger to individuals exposed to the virus." 86 Fed. Reg. 32411.

OSHA concluded that "the serious and potentially fatal consequences of COVID-19 pose a particular threat to employees, as the nature of SARS-CoV-2 transmission readily enables the virus to spread when employees are working in spaces shared with others." 86 Fed. Reg. 32382. When people are in close contact with others in an indoor space, the "most common way the virus spreads from an infected person to others is through the respiratory droplets that are produced when an infected person coughs, sneezes, sings, talks or breathes." 86 Fed. Reg. 32392. "Pre-symptomatic and asymptomatic transmission are significant drivers of the continued spread of COVID-19." 86 Fed. Reg. 32394.

OSHA's finding of grave danger incorporated less severe illness and long COVID stating "even 'mild' cases of COVID–19—where hypoxia (low oxygen in

the tissues) is not present—require isolation and may require medical intervention and multiple weeks of recuperation, while severe cases of COVID–19 typically require hospitalization and a long recovery period. These cases might be referred to as ''long COVID'' because symptoms persist long after recovery from the initial illness, and could potentially be significant enough to negatively affect an individual's ability to work or perform other everyday activities. 86 Fed. Reg. 32382. Since the ETS was issued, there have been new studies showing that long COVID is a significant problem for as many as half of all COVID survivors, and that fully vaccinated individuals with breakthrough infection remain at risk of long-term adverse health effects.[7]

OSHA considered the impact on mental health of healthcare workers in its finding of grave danger "both as a result of the toll of living and working through such a disruptive pandemic, but also because of actual medical impacts the virus might have on the brain itself." 86 Fed. Reg. 32387.

Further OSHA recognized the danger of increased transmissibility and the grave danger healthcare workers face with new variants of concern, "[a]s new strains with increased transmissibility or more severe effects enter the U.S.

---

[7] *See, e.g.*, Gaber, T.A.-Z.K., A. Ashish, and A. Unsworth, *Persistent post-covid symptoms in healthcare workers*, Occupational Medicine, 2021 (available at https://pubmed.ncbi.nlm.nih.gov/33830208/ ).

population, healthcare workers may be among the first to be exposed to them when those who are infected seek medical care." 86 Fed. Reg. 32394.

Since the ETS was issued in June, two variants of concern have emerged which are more transmissible than the previous SARS-CoV-2 virus types. The delta variant which emerged over the summer, became dominant and caused a major spike in infections and deaths, and is estimated to be at least twice as infectious as the original SARS-CoV-2 strain. That was followed by the omicron variant which emerged in the U.S. in recent weeks and is even more transmissible than the Delta strain and has caused an explosion in infections which have reached the highest level during the entire pandemic and are still increasing. OSHA relied heavily on "CDC guidance and the best available evidence . . . [finding that] a grave danger [exists] in healthcare [settings] for vaccinated and unvaccinated HCP." 86 Fed. Reg. 32399. OSHA recognized that while vaccination reduced the risk of adverse health effects for healthcare workers "it does not eliminate the grave danger faced by vaccinated healthcare workers in settings where patients with suspected or confirmed COVID-19 receive treatment." 86 Fed. Reg. 32382. Despite the relatively rapid distribution of vaccines in many areas of the United States, a substantial proportion of the working age population remains unvaccinated and susceptible to COVID–19 infection, including approximately a quarter of all healthcare and healthcare

support workers.[8] Because workers in healthcare settings where COVID–19 patients are treated continue to have regular exposure to SARS-CoV-2 and any variants that develop, they remain at an elevated risk of contracting COVID–19 regardless of vaccination status. Therefore, OSHA has determined that a grave danger to healthcare and healthcare support workers remains, despite the fully-vaccinated status of some workers, and that an ETS is necessary to address this danger. 86 Fed. Reg. 32379

The number of infections and deaths among healthcare workers are much higher today than in June 2021 when the ETS was issued. The latest data available on the CDC website showed a huge surge in infections and deaths among nursing home staff the week ending Dec 26 based on preliminary data. https://covid.cdc.gov/covid-data-tracker/#nursing-home-staff. There were 10,353 infections and 58 deaths reported among nursing home workers the week ending 12/26/2021, compared with 4,563 infections and 15 deaths a month earlier (week ending 11/28/2021) and with 495 infections and 3 deaths (during the week that the ETS issued in June 2021). https://covid.cdc.gov/covid-data-tracker/#health-care-personnel.

---

[8] King et al., *COVID-19 Vaccine Hesitancy January-March 2021 among 18-64 year old US Adults by Employment and Occupation*, medRxiv (April 24, 2021), available at https://www.medrxiv.org/content/10.1101/2021.04.20.21255821v2.full.text.

**D. OSHA Found An ETS Is Necessary to Protect Healthcare Workers from COVID-19**

When OSHA issued the HC ETS, it found that an ETS is necessary to protect healthcare workers.," 86 Fed. Reg. 32412, and identified several reasons why.

First, OSHA found that "no other agency action is adequate to protect employees against grave danger." 86 Fed. Reg. 32414. Contrary to its earlier stance that the OSH Act's general duty clause, voluntary guidance and existing OSHA standards were adequate to address the COVID-19 pandemic, OSHA acknowledged that its enforcement experience since the pandemic began "has demonstrated that existing enforcement options do not adequately protect healthcare employees from the grave danger posed by COVID-19." 86 Fed. Reg. 32415.

This is true for several reasons. None of the existing OSHA standards directly address COVID-19 hazards. 86 Fed. Reg. 32416. OSHA has found that reliance on the general duty clause to protect workers from COVID-19 hazards "falls short of the agency's mandate to protect employees from the hazards of COVID-19 in the settings covered by the standard" because general duty clause citations impose a heavy litigation burden on OSHA and "it is not a good tool for requiring employers to adopt specific, overlapping, and complementary measures"

like those necessary to protect workers from COVID-19 infection and required by the ETS. 86 Fed. Reg. 32418.  The Healthcare ETS makes detailed determinations about the inadequacy of the General Duty Clause in the current context. See 86 Fed. Reg. 32418-32422.

Second, OSHA also concluded that employers do not comply with voluntary guidance "consistently or rigorously enough" to provide adequate protection to workers. 86 Fed. Reg. 32421. And OSHA also found that despite "the substantial promise that vaccines hold . . . OSHA does not believe that they eliminate the need for [the ETS]." 86 Fed. Reg. 32423.

Finally, OSHA found that "a uniform nationwide response to the pandemic is necessary to protect workers."  Most states with OSHA plans have now adopted an ETS for healthcare workers as they are required to do once Federal OSHA adopts a standard.[9]  But other jurisdictions have moved in the opposite direction, issuing rules prohibiting face coverings in certain public spaces most notably schools. The ETS ensures a uniform federal floor of protection.

OSHA adopted a "layered approach" because "[a]n effective infection prevention program" relies upon "a suite of overlapping controls" so the "inherent

---

[9] Each of the states that has adopted an ETS has an OSHA state plan approved under section 18 of the OSH Act.   A state-plan state may adopt standards that differ from, and are more protective than, an OSHA ETS so long as the state standard is "as effective as" the federal standard. 29 U.S.C. § 667.

weakness in any one approach" does not cause an infection. 86 Fed. Reg. 32426.

The layered approach required by the Healthcare ETS is consistent with CDC

guidance.[10]  The emergence of the omicron variant, which is much more

transmissible than previous strains, heightens the importance of and necessity for

the mitigation measures required in the ETS. OSHA, CDC and the World Health

Organization have all made clear that given the high transmissibility of the

omicron variant, vaccinations alone are not sufficient to protect against

transmission and that masks, respiratory protection, ventilation, testing, quarantine

and isolation are required to stop exposure to and transmission of the virus among

healthcare workers.[11]

E.     **OSHA Found that the ETS Would Significantly Improve Occupational Safety and Health for Healthcare Workers**

OSHA estimated that approximately 18.1 million healthcare workers would

be protected by the Healthcare ETS. 86 Fed. Reg. 32487.  The agency estimated

---

[10] https://www.cdc.gov/coronavirus/2019-ncov/hcp/infection-control-recommendations.html (Interim Infection Prevention and Control Recommendations for Healthcare Personnel During the Coronavirus Disease 2019 (COVID-19) Pandemic) Updated Sept 10, 2021.

[11] SHA, Statement on the Status of the OSHA COVID-19 Healthcare ETS, (December 27, 2021)  https://www.osha.gov/coronavirus/ets; SARS-CoV-2 B.1.1.529 (Omicron) Variant — United States, December 1–8, 2021. MMWR Morb Mortal Wkly Rep 2021;70:1731-1734. DOI: http://dx.doi.org/10.15585/mmwr.mm7050e1external icon

that the Healthcare ETS would prevent 295,284 infections and 776 deaths among healthcare workers in six months. 86 Fed. Reg. 32537.

OSHA recognized the direct health benefits of preventing health care worker infections and deaths, but also secondary and feedback health benefits, including COVID-19 cases avoided from exposure to an infected worker at the home or workplace, and the positive impact on the health care system.

 Numerous experts have found that the mitigation requirements set forth in the ETS remain both necessary and effective in reducing the risk COVID-19 poses to nurses and other healthcare workers and OSHA has in no way retracted its prior finding that that is the case. *See, e.g.*, Lawton, Butler, & Peters, *Airborne Protection for Staff Is Associated with Reduced Hospital-acquired COVID-19 in English NHS Trusts*, J. Hosp Infection (Nov. 29, 2021) *available at* https://www.journalofhospitalinfection.com/article/S0195-6701(21)00427-8/fulltext?dgcid=raven_jbs_aip_email (last visited Jan. 2, 2022); Morris, Sharrocks, et al., *The Removal of Airborne SARS-CoV-2 by Air Filtration on COVID-19 Surge Units*, Clinical Infectious Diseases (Oct. 30, 2021) (finding that increased air filtration reduced risk of COVID transmission) *available at* https://academic.oup.com/cid/advance-article/doi/10.1093/cid/ciab933/6414657 (last visited Jan. 2, 2022); Escobar, et al., *Mitigation of a Coronavirus Disease 2019 Outbreak in a Nursing Home Through Serial Testing of Residents and Staff*,

Clinical Infectious Diseases (July 20, 2021) (finding that establishing a dedicated COVID unit, rapidly and repeatedly testing residents every 3-5 days and cohorting them based on SARS-CoV-2 status, universal masking of all residents and staff, and no visitors effectively controlled an outbreak in a nursing home in Pennsylvania) *available at*

*https://academic.oup.com/cid/article/72/9/e394/5873784* (last visited Jan. 2, 2022).

## III.    ARGUMENT

### A.    The D.C. Circuit May Properly Grant this Writ

When judicial review of agency action is committed by statute to the courts of appeals, the appellate courts also have exclusive jurisdiction under the All Writs Act to consider a claim that the agency has "unlawfully withheld or unreasonably delayed" that action and to "compel" the agency to take action the law requires. *See TRAC*, 750 F.2d at 75-77. Section 6(f) of the OSH Act gives the courts of appeals jurisdiction to review a final OSHA standard.  This court has ruled several times that it can also review claims that OSHA has impermissibly failed to issue a standard.  *See Int'l Union, UAW*, 756 F.2d at 163. The Court has also ruled that when an agency withdraws a proposed rule, it will consider a challenge to the withdrawal as a petition of writ of mandamus. *Int'l Union, United Mine Workers of Am. v. U.S. Dep't of Labor*, 358 F.3d 40 (D.C. Cir. 2004).

When, as here, "agency recalcitrance is in the face of a clear statutory duty is of such magnitude that it amounts to an abdication of statutory responsibility, the court has the power to order the agency to act to carry out its substantive statutory mandates." *Pub. Citizen Health Research Grp. v. Comm'r Food & Drug Admin.*, 740 F.2d 21, 32 (D.C. Cir. 1984). This Court should exercise that power here.

**B.      OSHA Has a Mandatory Duty to Protect Healthcare Workers From the Grave Danger of Exposure to Covid-19 OSHA Itself Has Found.**

Section 6(c) of the OSH Act commands that OSHA "shall" issue an ETS to protect workers when it determines that workers are exposed to a grave danger and an ETS is necessary to protect workers from that danger. Once OSHA makes both findings, as it has here, OSHA agrees that it *must* take action to protect workers from grave danger. 86 Fed. Reg. 32380. The word "shall," when it appears in a statute, is an imperative: "The word 'shall' generally indicates a command that admits of no discretion on the part of the person instructed to carry out the directive." *Ass'n of Civilian Technicians v. FLRA*, 22 F.3d 1150, 1153 (D.C. 1994). *See also, Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 661 (2007) (holding that where "shall" is used, "[b]y its terms, the statutory language is mandatory," and that the language of another statute is "similarly imperative: It provides that each Federal agency shall . . . .").

Here, OSHA unequivocally concluded in June 2021 that employees were exposed to a grave danger and that an ETS is necessary to protect workers from

that danger. OSHA has not in any way withdrawn those findings. Nor could it as since June 2021, the COVID-19 pandemic has only grown worse. OSHA has, in fact, reiterated its view that healthcare workers remain at grave danger.

OSHA also agrees that existing nonmandatory guidance, general standards, and the Act's general duty clause are inadequate to protect workers from the grave danger and a COVID specific standard is "necessary." These findings, which OSHA has reaffirmed in respect to all workers as recently as November 2021 when it issued an ETS protecting workers not covered by the Healthcare ETS, require that OSHA take action to protect the workers at grave danger.

Instead, in the face of acknowledged grave danger and necessity, OSHA has announced its intent to withdraw the ETS protecting healthcare workers—the very workers OSHA itself found to be at gravest danger. Further, despite the fact that OSHA believes existing standards and the general duty clause are inadequate to protect healthcare workers from the grave danger OSHA has identified, the Agency now intends to rely on these ineffective tools to protect workers. And, although the Act demands that OSHA adopt a permanent COVID standard expeditiously after issuing an ETS, OSHA has announced no timetable for doing so.

While this Court has debated the appropriate standard of review in cases challenging OSHA's failure to issue an ETS, *compare In re Int'l Chem. Workers*

*Union*, 830 F.2d 369, 372 (D.C. Cir. 1987) (suggesting that a "reasonable[ness]" standard applies), *with Pub. Citizen Health Research Grp. v. Auchter*, 702 F.2d 1150, 1156 (D.C. Cir. 1983) (suggesting that an "abuse of discretion" standard applies), that debate has no relevance under these extraordinary and unique circumstances. That is so because section 6(c) of the Act imposes a mandatory duty on OSHA to act when it has determined a grave danger exists and an ETS is necessary to protect workers from that danger. OSHA has unequivocally made both findings here. Regardless of the degree of deference, the Secretary's decision to withdraw existing COVID-19 protections is contrary to the express, unambiguous commands of the OSH Act, and represents a clear "abdication of [OSHA's] statutory responsibility," which cannot stand. *Pub. Citizen Health Research Grp.*, 740 F.2d at 32.

Given OSHA's determinations—that healthcare workers face a grave danger and that the OSH Act's existing regulatory tools are inadequate to protect healthcare workers from that grave danger—OSHA *must* take action to protect those workers from COVID-19 by retaining and enforcing the June ETS and by adopting a permanent standard incorporating those protections under section 6(b)(5) of the Act. OSHA has done neither here.

Instead, OSHA has decided to create a gaping hole in the protection of workers required by Congress. Instead of retaining and enforcing the existing ETS,

it has announced its intention to withdraw it. Instead of completing the rulemaking to adopt a permanent COVID-19 standard protecting healthcare workers while the ETS remains in effect, OSHA has announced that it *may* do so at some unspecified time in the future in connection with a not yet proposed infectious disease standard. And, OSHA has published no explanation for these inexplicable actions.

The OSH Act does not permit OSHA to abandon healthcare workers in the face of grave danger. Inaction is not a statutorily permitted option.

All the factors the Court considers under *TRAC* to determine whether to compel agency action point in favor of mandamus here.[12] This Court should enjoin OSHA from withdrawing the ETS and order that it promulgate a permanent standard protecting healthcare workers from COVID 19 within 30 days. Under section 6(c) of the OSH Act, an ETS remains in effect until superseded by a permanent standard. 29 U.S.C. § 655(c)(2). The ETS serves as a proposed permanent standard. The OSH Act requires OSHA to complete a rulemaking to adopt the permanent standard within six months. 29 U.S.C. § 655(c)(3). Under the statutory scheme, an ETS "is effective until superseded," 86 Fed. Reg. 32381, by a permanent standard because Congress intended that there would be no gaps in

---

[12] The *TRAC* factors are usually relied upon in cases alleging "unreasonable delay." Here the question is not whether OSHA has unreasonably delayed action, but whether it has "improperly withheld" agency action required by section 6(c) of the OSH Act.

protections for workers who face grave dangers. Congress clearly did *not* intend that delays in rulemaking would leave workers exposed to a grave danger with no protections other than those OSHA has determined to be inadequate. This Court should order OSHA to retain and enforce the Healthcare ETS until it adopts a permanent COVID 19 standard protecting healthcare workers.

This Court has not hesitated to impose a timetable to govern OSHA regulatory action when it has found such judicial action necessary. *Pub. Citizen Research Grp.*, 702 F.2d at 1153; *Int'l Union, UAW*, 756 F.2d at 165. In *Public Citizen,* the Court ordered OSHA to publish a proposed ethylene oxide standard within thirty days of its order. While OSHA may have discretion as to the content of any standard regulating workplace exposures to COVID-19 in response to comments it has received, it has, as we have shown, a statutory duty to impose some type of mandatory, legally-enforceable obligations on employers sufficient to protect healthcare employees from the virus. *Cf. In re: Pub. Emps. for Environmental Responsibility*, 957 F.3d 267, 273 (D.C. Cir. 2020) (distinguishing an agency's discretion over the content of a plan from an agency's statutory duty to create a plan). And, absent an order from this Court requiring OSHA to fulfill its statutory duty with extraordinary dispatch, the COVID-19 pandemic that continues to surge across the country will exact a terrible toll on healthcare workers.

Moreover, compelling OSHA to act within thirty days is appropriate

because OSHA has already published a detailed analysis of COVID hazards and necessary protections in the Federal Register, it has completed a detailed feasibility analysis of the impact of its proposed rule, it has solicited and received comment on its proposal. It can finalize a permanent standard with dispatch.

Congress did not contemplate, and the Act does not permit, OSHA to abandon its effort to issue a permanent COVID-19 standard, and to withdraw an ETS, while a grave danger continues unabated. Leaving healthcare workers with no meaningful protections against COVID -19, in the face of a continuing grave danger, is plainly unlawful.

In addition, OSHA has also violated section 6(e) of the OSH Act by announcing its withdrawal of the ETS before completing the COVID-19 rulemaking, without publishing a statement of reasons for its actions in the Federal Register. Section 6(e) provides: "Whenever the Secretary promulgates any standard, makes any rule, order, or decision, grants any exemption or extension of time, or compromises, mitigates, or settles any penalty assessed under this Act, he shall include a statement of the reasons for such action, which shall be published in the Federal Register." 29 U.S.C. § 655(e). This Court can uphold OSHA's actions only on the grounds the Agency has articulated according to section 6(e) and it has articulated none. A stay of the agency's withdrawal of the ETS and remand for

further action by OSHA is warranted on that basis alone. *Int'l Union, United Mine Workers of Am.*, 358 F.3d at 45.

## IV.    CONCLUSION

For the foregoing reasons, this Court should grant a writ of mandamus compelling OSHA to:

(1)    Issue — within thirty (30) days of this Court's grant of the writ — a Permanent Standard for Healthcare Occupational Exposure to COVID-19 ("Permanent Healthcare Standard") aimed at protecting the life and health of millions of nurses and other frontline healthcare workers throughout the United States in grave danger from the deadly COVID-19 pandemic; and

(2)    Retain and enforce the Healthcare Emergency Temporary Standard on Occupational Exposure to COVID-19 ("Healthcare ETS") issued by the Secretary of Labor on June 21, 2021, until the Healthcare ETS is properly superseded by a Permanent Standard.

Dated:  January 5, 2022                    Respectfully submitted,

/s/ Nicole J. Daro                              *Counsel for Petitioners*
Nicole J. Daro                                     *NNU and NYSNA*
Micah L. Berul
Carol A. Igoe
NATIONAL NURSES UNITED
LEGAL DEPARTMENT
155 Grand Avenue
Oakland, CA  94612

510-207-8291 Telephone
510-663-4822 Facsimile
ndaro@calnurses.org
mberul@calnurses.org
cigoe@calnurses.org


/s/ Jonathan Walters                          Counsel for Petitioner PASNAP
Jonathan Walters, Esquire
Markowitz & Richman
123 South Broad Street
Suite 2020
Philadelphia, PA 19109
(215) 875-3121 Telephone
(215) 790-0668 Facsimile
(215) 990-9410 Mobile
jwalters@markowitzandrichman.com


/s/ David Strom                               Counsel for Petitioner AFT
DAVID J. STROM, General Counsel
DANIEL J. MCNEIL, Deputy General
Counsel
AMERICAN FEDERATION
OF TEACHERS
555 New Jersey Ave. N.W.
Washington, DC 20001
(202) 393-7472
dstrom@aft.org
dmcneil@aft.org


/s/ Judy Rivlin                               Counsel for Petitioner AFSCME
American Federation of State
County and Municipal Employees
Judy Rivlin, General Counsel
1625 L Street, NW
Washington, DC 20036
(202) 775-5900 Telephone
jrivlin@afscme.org

/s/ Harold Craig Becker                    *Counsel for Petitioner AFL-CIO*
Harold Craig Becker
General Counsel
AFL-CIO
815 Black Lives Matter Plaza, N.W.
Washington, D.C. 20006
(202) 637-5310 Telephone
cbecker@aflcio.com

/s/ Randy S. Rabinowitz
Randy S. Rabinowitz,
OSH Law Project, LLC
PO Box 3769
Washington, D.C. 20027
(202) 256-4080 Telephone
randy@oshlaw.org

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this Emergency Petition contains 6,635 words, and therefore is in compliance with the word limit set by Fed. R. App. P. 21(d)(1).


/s/ Nicole J. Daro

*Counsel for Petitioner NNU*

# CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of January 2022, I caused a copy of this Emergency Petition to be served on Respondent by electronic and overnight mail delivery to:

Seema Nanda
Solicitor of Labor
United States Department of Labor
200 Constitution Ave., N.W.
Washington, D.C. 20210
Nanda.Seema@dol.gov

Edmund Baird
Associate Solicitor
Occupational Safety & Health Division
United States Department of Labor
200 Constitution Ave., N.W.
Washington, D.C. 20210
Baird.Edmund@dol.gov

/s/ Nicole J. Daro

*Counsel for Petitioner NNU*

## CERTIFICATE OF PARTIES AND AMICI CURIAE

Pursuant to Circuit Rules 21(d) and 28(a)(1)(A), undersigned counsel for Petitioners hereby certifies the following:

1. Petitioners are National Nurses United (NNU), New York State Nurses Association (NYSNA), Pennsylvania Association of Staff Nurses and Allied Professionals (PASNAP), American Federation of Teachers (AFT), American Federation of State, County and Municipal Employees (AFSCME), and American Federation of Labor and Congress of Industrial Organizations (AFL-CIO).

2. Respondent is the Occupational Safety and Health Administration, United States Department of Labor (OSHA).

3. There are no intervenors or amici to date.

/s/ Nicole J. Daro_____

*Counsel for Petitioner NNU*

# RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Circuit Rules 21(d) and 26.1, Petitioners hereby make the following disclosures:

1.    All the Petitioner Unions are unincorporated associations that exist for the purpose of representing employees in collective bargaining and otherwise improving the working conditions of employees.  The AFL-CIO is an association of such unions.

2.    The Petitioners have no parent companies and issue no stock or debt securities.

3.    There was no court or agency proceeding below in which counsel participated.

# Exhibit 1
*In re: NNU, et al., Petitioners*
Emergency Petition for a Writ of Mandamus

Coronavirus Disease (COVID-19)  /  COVID-19 Healthcare ETS

# COVID-19 Healthcare ETS

## Statement on the Status of the
## OSHA COVID-19 Healthcare ETS

(December 27, 2021)

On June 21, 2021, OSHA adopted a Healthcare Emergency Temporary Standard (Healthcare ETS) protecting workers from COVID-19 in settings where they provide healthcare or healthcare support services. 86 FR 32376. Under the OSH Act, an ETS is effective until superseded by a permanent standard – a process contemplated by the OSH Act to occur within 6 months of the ETS's promulgation. 29 U.S.C. 655(c).

OSHA announces today that it intends to continue to work expeditiously to issue a final standard that will protect healthcare workers from COVID-19 hazards, and will do so as it also considers its broader infectious disease rulemaking. However, given that OSHA anticipates a final rule cannot be completed in a timeframe approaching the one contemplated by the OSH Act, OSHA also announces today that it is withdrawing the non-recordkeeping portions of the healthcare ETS. The COVID-19 log and reporting provisions, 29 CFR 1910.502(q)(2)(ii), (q)(3)(ii)-(iv), and (r), remain in effect. These provisions were adopted under a separate provision of the OSH Act, section 8, and OSHA found good cause to forgo notice and comment in light of the grave danger presented by the pandemic. See 86 FR 32559.

With the rise of the Delta variant this fall, and now the spread of the Omicron variant this winter, OSHA believes the danger faced by healthcare workers continues to be of the highest concern and measures to prevent the spread of COVID-19 are still needed to protect them. Given these facts, and given OSHA's anticipated finalization of this rule, OSHA strongly encourages all healthcare employers to continue to implement the ETS's requirements in order to protect employees from a hazard that too often causes death or serious physical harm to employees.

As OSHA works towards a permanent regulatory solution, OSHA will vigorously enforce the general duty clause and its general standards, including the Personal Protective Equipment (PPE) and Respiratory Protection Standards, to help protect healthcare employees from the hazard of COVID-19. The Respiratory Protection Standard applies to personnel providing care to persons who are suspected or confirmed to have COVID-19. OSHA will accept compliance with the terms of the Healthcare ETS as satisfying employers' related obligations under the general duty clause, respiratory protection, and PPE standards. Continued adherence to the terms of the healthcare ETS is the simplest way for employers in healthcare settings to protect their employees' health and ensure compliance with their OSH Act obligations.

OSHA believes the terms of the Healthcare ETS remain relevant in general duty cases in that they show that COVID-19 poses a hazard in the healthcare industry and that there are feasible means of abating the hazard. OSHA plans to publish a notice in the Federal Register to implement this announcement.

# About the Standard

ETS Regulatory Text (29 CFR 1910, Subpart U)
  - 1910.502 - Healthcare.

- 1910.504 - Mini Respiratory Protection Program.
- 1910.505 - Severability.
- 1910.509 - Incorporation by Reference.

Federal Register

Federal Register - Correction

Materials Incorporated by Reference

News Release

NEW  Webinar - COVID-19 ETS

Summary – COVID-19 Healthcare ETS *(Spanish)*

Fact Sheets

- Subpart U – COVID-19 Healthcare ETS
- COVID-19 Healthcare ETS *(Spanish)*
- Mini Respiratory Protection Program
- Workers' Rights *(Spanish)*

Is Your Workplace Covered by the ETS?

ETS FAQs

Executive Order

# Implementation

COVID-19 Plan Template

COVID-19 Healthcare Worksite Checklist & Employee Job Hazard Analysis

COVID-19 Log Sample

Reporting COVID-19 Fatalities and In-Patient Hospitalizations to OSHA

Employer Notification Tool

Communication and Coordination Between Employers

Employee COVID-19 Health Screening Questionnaire Sample *(Spanish)*

Notification Removal and Return to Work Flow Charts

- For Employees
- For Employers

Employee Training Presentations

- Healthcare ETS
- Mini Respiratory Protection Program

# Enforcement

Inspection Procedures for the Healthcare ETS



Vaccines.gov

File an OSHA Complaint

Contact Us

Stay Connected

# UNITED STATES
# DEPARTMENT OF LABOR

Occupational Safety & Health Administration

200 Constitution Ave NW

Washington, DC 20210

📞 800-321-6742 (OSHA)

TTY

www.OSHA.gov

**FEDERAL GOVERNMENT**

White House

Severe Storm and Flood Recovery
Assistance

Disaster Recovery Assistance

DisasterAssistance.gov

USA.gov

No Fear Act Data

U.S. Office of Special Counsel

**OCCUPATIONAL
SAFETY & HEALTH**

Frequently Asked
Questions

A - Z Index

Freedom of Information
Act - OSHA

Read The OSHA
Newsletter

Subscribe to the OSHA
Newsletter

OSHA Publications

Office of Inspector
General

**ABOUT THIS SITE**

Freedom of Information Act - DOL

Privacy & Security Statement

Disclaimers

Important Web Site Notices

Plug-ins Used by DOL

Accessibility Statement